## DAVIS *v.* THE STATE.

1. On the trial of a person charged with burglary by breaking and entering a railroad-depot with intent to steal therefrom certain goods, it was not error in the court to refuse to rule out testimony of a witness who swore from his memory, after having made a personal examination of the goods, what amount of the particular class alleged to have been stolen was shipped and stored in the depot before the burglary, and what quantity had been missed therefrom after the breaking and entering, although it appeared that the amount of such goods was also indicated by way-bills in the custody of the witness.
2. Where, on the trial of an indictment for burglary which charged the accused with breaking and entering the depot of the "Chattanooga Southern Railroad Co.," proof was made by the State that the depot of the company named was burglariously entered as charged, testimony offered in behalf of the defendant to the effect that the

corporate name of the owner of the depot was "Chattanooga South-
ern Railway Co.," even if admitted, would not establish a material
variance between the allegations in the indictment and the proof.

3. Proof of the corpus delicti may be sufficient corroboration of a·con-
fession of guilt to sustain a verdict of guilty. There was no error
in the court so charging the jury, the court expressly stating in the
same connection that such proof "might be a form of corroboration,
but the jury in every case are the judges of what corroborations are
sufficient."

Argued November 8, — Decided November 19, 1898.

Indictment for burglary. Before Judge Henry. Walker
superior court. August 27, 1898.

*Copeland & Jackson,* for plaintiff in error.
*Moses Wright, solicitor-general,* contra.

LEWIS, J. Wilson Davis was indicted by the grand jury
of Walker county for the offense of burglary, "for that, on the
24th day of April, 1897, in the county aforesaid, he did unlaw-
fully, burglariously and feloniously break and enter into the
depot of the Chattanooga Southern Railroad Co., at Kensing-
ton, Ga., said depot being a place where valuable goods were
stored and kept, with intent to commit a larceny therein, the
said intent being then and there to take and carry away seven
sacks of cottonseed-meal, of the value of ten dollars, with in-
tent to steal the same." On the trial of the case there was
proof introduced by the State that when the depot was closed
on a certain afternoon, there was a given quantity of cotton-
seed-meal therein, and that the next morning seven sacks of
this meal were found missing. It further appeared that while
one of the windows was up in the depot, the blinds to the same
were closed, and that the next morning the blinds were found
open and the window down. The defendant confessed to en-
tering the depot and taking therefrom the seven sacks of cot-
tonseed-meal, and carrying them to a certain place. He im-
plicated in his confession another party as an accomplice, who,
he stated, made the opening in the depot for him before he en-
tered. Cottonseed-meal answering to the description of that
stolen was found at the place where the defendant stated he had
put the stolen goods. The defendant was found guilty, with

recommendation that he be punished as for a misdemeanor, and upon the overruling of his motion for a new trial he excepted.

1. The first assignment in the motion for a new trial is that the court erred in overruling the motion of movant to rule out the evidence of the witness Smith relative to the date of receiving the goods alleged to have been taken from the depot at. Kensington, the fact of receiving such goods, and the amount received. This motion was based upon the ground that it appeared from the evidence of said witness that the alleged facts. testified to were in writing. It appeared from the testimony that the only writings on the subject were way-bills giving the amount of the goods that had been shipped to this depot. But. the witness did not undertake to testify to the contents of the way-bills, or any other written instrument. He testified from his recollection, after having inspected and counted the sacks of cottonseed-meal, both before and after the alleged crime, as. to what was stored in the depot, and what had been taken therefrom. The way-bills alone, instead of being the highest proof of this fact, would not have been any proof at all. They could only serve as memoranda to refresh the recollection of the witness as to what goods were actually in the depot; but it seemed the witness needed no such aid, and manifestly his testimony on the subject was admissible, and was evidence of as high a character as could have been procured.

2. Complaint is further made that the court erred in refusing to admit in evidence the act of the legislature approved October 27, 1889, showing that the same line of railroad upon which the depot was located was incorporated as the " Chattanooga Southern *Railway* Co." The indictment charged the depot to belong to the " Chattanooga Southern *Railroad* Co." The object of this proof was manifestly to show that the depot was not the property of the company named in the indictment, but of another company. We think there was clearly no error in refusing to allow the proof offered. It was proved by the State that the depot belonged to the Chattanooga Southern *Railroad* Co., as charged in the indictment. Even if the proof had shown that the name of the corporation owning the depot

was improperly stated by its being called a "railroad" instead of a "railway" company, we do not think such a slight variance between the allegation and proof would have been fatal. As will be seen by the case of *Jackson* v. *State,* 76 *Ga.* 552 (6), and the opinion of the court on page 567, the controlling question upon this point is whether or not "the indictment, by its description, sufficiently identifies the artificial person it mentions as the same being as that which is created by the act of the legislature." The words "railway" and "railroad" have identically the same meaning, and we think the identification of the owner of the depot in this case was sufficiently clear from the description in the indictment, notwithstanding there might have been a slight error made in the use of a wrong word identical in meaning and similar in sound to the particular term used in the charter.

There is no doubt that, as a general rule of law, when an indictment alleges that property which is the subject-matter of such a crime as larceny or burglary belongs to a corporation, the name of the corporation should be proved as laid, and any *material* variance would be fatal. 1 Bishop, New Crim. Proced. §488; also §682. There is some conflict of authority as to what would constitute a material variance in such matters. In the case of McGary v. People, 45 N. Y. 153-4, the indictment for arson charged the building fired as belonging to the "Phœnix Mills Company," and it appeared on the trial that the true corporate name of the company owning the building was "The Phœnix Mills of Seneca Falls." It was there held that the variance was fatally defective. In the case of Sykes v. People, 132 Ill. 32, the indictment charged an intention to defraud "The Merchants' Loan and Trust Company, organized and incorporated under and by virtue of the laws of the State of Illinois"; the proof showed that the name of the corporation was "The Merchants' *Savings,* Loan and Trust Company," and such variance was held to be fatal. In both these cases, however, it will be seen that there was a total omission of an entire word or words which formed an integral part of the corporate name. These decisions are the strongest we have been able to find that would even tend to support a contrary view to our ruling in this case; but it will be readily seen that the variance between the in-

dictment and proof in each of those cases is much greater than that which exists in the case at bar. Here there is no omission of an integral part of the corporate name, but merely the use of a wrong word which means identically the same thing as the word used in the charter. The decisions, however, cited in the New York and Illinois cases above, we think, are in conflict with the ruling in Commonwealth *v.* Jacobs, 152 Mass. 276, where it was decided that no fatal variance existed when the indictment used the words "Warren Club," and the proof showed that the corporate name was the "Warren Social Club," if the club was as well known by one name as the other. In accord with the principle ruled in the Massachusetts case is the decision of this court in *Rogers* v. *State,* 90 *Ga.* 463, in which it was held that where an indictment charged the cotton was stolen from the possession of the "Central R. R. and Banking Co.," and the proof showed that the corporate name of the company that had possession of the goods was "The Central R. R. and Banking Co. of Georgia," the variance was immaterial. In the case of Putnam *v.* United States, 162 U. S. 687-691, the above cases from New York and Illinois are referred to, but not indorsed; while the decision of this court in *Rogers* v. *State* is approved. The exact question raised by this record was ruled in the case of State *v.* Goode, 68 Iowa, 593, where it was decided: "That the company from which the alleged embezzlement was made was called 'Railroad Company' in the indictment and instructions, while its corporate name was 'Railway Company,' held to be immaterial." We think, therefore, that it is well established by authority that while, as a general rule, the proof should conform to the allegations in the indictment, both with respect to the name of the defendant and to names of other persons necessary to be described, yet a variance not affecting the *identity* of the parties will be immaterial. 10 Enc. of Pleading & Pr. 510. Applying this rule to the case under consideration, we think there can be no question that the variance sought to be shown by plaintiff in error is utterly immaterial. It could not possibly have affected the identity of the corporation alleged to be the owner of the depot. The State proved by witnesses that that was the depot belonging to the company named in the indictment. Mani-

festly, then, the company was known, at least by some, under the descriptive name set forth in the indictment. Even the agent, an employee of the corporation itself, who is presumed to be familiar with the name by which his company is ordinarily called, gives it the identical name mentioned in the indictment.

3. Exception was taken to the charge of the court to the effect that a confession of guilt might be corroborated by proof of the corpus delicti; the court in this connection charging the jury, in substance, that if they believed it was satisfactorily established that a burglary had been committed by somebody, as charged in the indictment, then "that would be a sufficient corroboration of the confession to justify a conviction, if the jury believe that it was sufficient corroboration. That is, it might be a form of corroboration, but the jury in every case are the judges of what corroborations are sufficient." Error is assigned on this charge on the ground that it strongly tended to express an opinion of the court against movant. While the charge of the court was rather awkwardly expressed, yet we think the manifest meaning can be gathered therefrom that it was not the purpose of the court to charge, as a matter of law, that proof of the crime having been committed was sufficient corroboration of a confession, but simply to state that the jury were authorized to draw this conclusion, and that the sufficiency of the corroboration was one entirely for them to pass upon. The question as to whether a confession was made, and whether a crime had been committed as charged, was, under the charge of the court, left entirely with the jury, and there was no intimation of any opinion on these facts as complained of by plaintiff in error.

The only remaining grounds in the motion are those of a general nature, that the verdict is contrary to law and evidence. It will be observed from the brief recital of the facts above given that the burglary was not only shown, but a confession of guilt was established, and in addition to being corroborated by proof of the burglary, was corroborated further by the fact that the goods were found where the defendant stated in his confession he had carried them. We think, therefore, the testimony not only sustains, but demands a verdict of guilty.

*Judgment affirmed. All the Justices concurring, except Simmons, C. J., and Lumpkin, P. J., absent.*