CLAYBOURN *v.* THE STATE.

No. 13442.  September 26, 1940.  Rehearing denied October 15, 1940.

*Farr & Mitchell, Howard, Tiller & Howard,* for plaintiff in error.

*Ellis G. Arnall, attorney-general, W. Glenn Thomas, solicitor-general, William D. Turner, E. J. Clower* and *C. E. Gregory Jr., assistant attorneys-general,* contra.

DUCKWORTH, Justice. ■ Grounds 1 to 12, inclusive, of the amendment to the motion for a new trial comprise 169 pages of the record. Since all of these grounds deal with alleged error in allowing evidence of confessions which defendant alleges were induced by fear and coercion exerted upon him in procuring the first confession, upon which ground 1 is based, and which remained and influenced subsequent confessions set out in the other grounds, they will be treated together. It is provided by the Code, § 38-411: "To make a confession admissible, it must have been made voluntarily, without being induced by another, by the slightest hope of benefit or remotest fear of injury." It is contended by counsel that the defendant's confessions which were used against him upon the trial resulted from fear of injury, and were not voluntarily made, and by reason of such evidence he was deprived of the due process guaranteed by the 14th amendment of the constitution of the United States, and article 1, section 1, paragraph 3 (Code, § 2-103) of the constitution of the State. This record discloses that in his statement on the trial the defendant made no reference to the confessions or the manner of their procurement. The only thing in the record that would tend to sustain the contention of counsel that defendant's confessions were induced by coercion and fear is the series of questions propounded by defendant's counsel and his answers thereto reduced to writing by the court reporter before the trial. . This document was clearly inadmissible as evidence, and should have been excluded if objection had been presented. No objection was made, and it was allowed in evidence; but even this could not give to the document any probative value whatsoever. It is a mere exculpatory and self-serving declaration by the defendant, and is entirely without probative value. *Woolfolk* v. *State, 85 Ga.* 69 (13) (11 S. E. 814); *Myers* v. *State,* 97

*Ga.* 76 (9) (25 S. E. 252); *Woods* v. *State,* 137 *Ga.* 85 (4) (72 S. E. 908); *Westberry* v. *State,* 175 *Ga.* 115 (9) (164 S. E. 905); *Higgins* v. *Trentham,* 186 *Ga.* 264 (197 S. E. 862). Therefore, if there is to be found in the record any evidence of coercion or fear, it must be found solely in the circumstances whereby the defendant was questioned by the officers, was told that he way lying and that they knew of his guilt; and of his being carried from place to place without authority of law, and that for some days he saw neither relatives nor an attorney.

Assuming, as we do, that a practice of moving the defendant from place to place and from county to county, while in the custody of the law, without an order first obtained from the judge, is not such procedure as should be sanctioned, still it does not appear that this in the remotest degree influenced the various confessions made by the defendant. There is not a word of legal evidence in this record that shows or indicates that the defendant was at any time threatened, abused, frightened, or otherwise induced to confess his guilt. On the contrary, the solicitor-general urged his consideration of the possible injury to himself that would result from his confession of guilt. There is no law in either the constitution or statutes that forbids an officer or any one else from asking one charged with crime whether or not he is guilty. And while the legal evidence in this case shows conclusively that the alleged confessions were made without fear of injury or hope of reward, yet if the self-serving exculpatory written statement made by the defendant before the trial were considered as legal evidence, there would be nothing more than an issue of fact as to whether the confessions were made freely and voluntarily; and under our constitution (Code, §§ 2-105, 2-4501) that issue must be determined by the jury. *Dawson* v. *State,* 59 *Ga.* 333; *Irby* v. *State,* 95 *Ga.* 467 (2) (20 S. E. 218); *Hilburn* v. *State,* 121 *Ga.* 344 (3) (49 S. E. 318); *Smith* v. *State,* 139 *Ga.* 230 (76 S. E. 1016); *Wilburn* v. *State,* 141 *Ga.* 510 (5) (81 S. E. 444); *Hill* v. *State,* 148 *Ga.* 521 (4) (97 S. E. 442); *Whitworth* v. *State,* 155 *Ga.* 395 (2) (117 S. E. 450); *Jackson* v. *State,* 172 *Ga.* 575 (2) (158 S. E. 289); *Douberly* v. *State,* 184 *Ga.* 573 (2) (192 S. E. 223). The movant relies upon *Hawkins* v. *State,* 6 *Ga. App.* 109 (64 S. E. 289), *Chambers* v. Florida, 308 U. S. 541 (60 Sup. Ct. 127, 84 L. ed. 419), *Canty* v. Alabama, 309 U. S. 646 (60 Sup. Ct. 613, 84

L. ed. 556), and White *v.* Texas, 308 U. S. 608 (60 S. Ct. 1032,
84 L. ed. 640), s. c.　U. S.　decided May 27, 1940, for
support of his contention that he was deprived of due process of
law as guaranteed by the State and Federal constitutions by the
rulings admitting in evidence the various confessions. We will
now undertake to analyze the cases relied on, and show that they
differ materially on their facts from the present case. In the
Court of Appeals case, the defendant, a negro boy about thirteen
years old, was charged with burglary. In addition to the burglary
with which he was charged, he attempted to open the cash drawer
of another storehouse, and for this offense he was severely whipped
by the owner. Immediately afterward the son of the prosecutor
whipped the boy again, and after he finished asked him if he was
not guilty. At first he denied his guilt, but after the two persons
who had administered the whippings had argued with him he con-
fessed. The Court of Appeals properly held that the alleged con-
fession under such circumstances was improperly admitted in
evidence against the boy.

In the Chambers case, supra, about nine o'clock on the night of
May 13, 1933, an elderly white man was robbed and murdered.
Within twenty-four hours, from twenty-five to forty negroes living
in the community, including Chambers, were arrested without
warrant and confined in the county jail at Fort Lauderdale, Florida.
J. T. Williams, a convict guard, used bloodhounds in an attempt
to trail the murderers on the night of the crime, and thereafter
worked with the officers in attempting a solution. On May 15,
the sheriff and Williams took several of the prisoners to the Dade
County jail at Miami. On the way to Miami the sheriff told a
motorcycle patrolman that he was taking some negroes to Miami to
escape a mob. The prisoners thus carried to Miami were returned
to Fort Lauderdale the next day. From May 14 to Saturday,
May 20, the thirty to forty negroes were subjected to questioning.
From the afternoon of May 20 until sunrise on May 21 the de-
fendants underwent persistent and repeated questioning. The
sheriff testified that he questioned the defendants constantly in
daytime, and was too tired to question them at night. Early in the
morning of the 21st, the prisoners were led one at a time from their
cells to the questioning room, quizzed, and returned to their room
to await another turn. The sheriff and Williams, the convict

guard, questioned the prisoners, with only short intervals for food and rest for the questioners, from 3:30 on the afternoon of the 20th until 2:30 in the morning of the 21st, when one of the prisoners confessed. Thereupon the prosecuting attorney was called to the jail, but he was dissatisfied with the confession, and told the questioners to call him when they got something worth while. Just before sunrise the confessions objected to were pro cured. The Supreme Court of Florida affirmed the conviction, but the Supreme Court of the United States reversed that judgment, on the ground that the allowance of the confession in evidence was a denial of the due process of law guaranteed by the fourteenth amendment of the United States constitution.

In White v. Texas, supra, the defendant was convicted of rape. His conviction was affirmed by the Texas appellate court, and on certiorari to the Supreme Court of the United States was reversed. The defendant testified that he was kept in jail six or seven days, and that armed Texas rangers on several successive nights took him handcuffed from the jail up in the woods and whipped him, asking him each time about a confession, and warning him not to mention these nightly trips. The rangers and officers identified by the defendant as the ones who took him on the nightly trips did not specifically deny that he was taken out of the jail at night and interrogated in the woods. The local peace officer was not sure how many times the prisoner was removed from the jail, and one of the rangers said that he took him out so many times that the exact number could not be recalled. In the jail the sheriff put the defendant by himself, and kept watching him and talking to him. From approximately 11 p. m. to 3:30 a. m. he was subjected to constant interrogation, and immediately before the confession was made he was repeatedly asked by the prosecutor if he was ready to confess. The prisoner began to cry, and the typing of the confession was completed about daylight. In the Canty case, supra, the facts are not stated in the opinion, nor are they stated in the opinion of the Alabama court, 238 Ala. 439 (191 So. 260).

It is readily apparent that the facts in the present case are materially different from the facts in those cases upon which the movant relies. It is true that the United States Supreme Court in the Chambers case said: "The State of Florida challenges our jurisdiction to look behind the judgments below, claiming that the

issues of fact upon which petitioners base their claim that due process was denied them have been finally determined because passed upon by a jury. However, use by a State of an improperly obtained confession may constitute a denial of due process of law as guaranteed in the fourteenth amendment. Since petitioners have seasonably asserted the right under the Federal constitution to have their guilt or innocence of a capital crime determined without reliance upon confessions obtained by means proscribed by the due-process clause of the fourteenth amendment, we must determine independently whether petitioners' confessions were so obtained, by review of the facts upon which that issue necessarily turns." We do not construe the quoted language to mean or imply that the Supreme Court can or will invade the province of the jury and usurp the function of the jury to decide issues of fact. The language of that court simply means that it will within the bounds of its authority determine whether a confession was improperly obtained. That authority extends to all questions of law and all matters of fact where there is no issue, but it ends exactly where an issue of fact begins, and that field under our system is reserved exclusively for the trial jurors. Many very sacred individual rights are guaranteed by both the State and Federal constitutions. It is the duty of the judiciary, when called on, to protect and preserve all such rights. Power is not given unto the judiciary to determine which of these various rights are of greater importance, or to nullify or destroy any one of them on the theory that such is necessary for the preservation of another. The framers of our State constitution sought to guarantee one of these individual rights when they wrote into that constitution article 6, section 18, paragraph 1 (Code, § 2-4501), which declares: "The right of trial by jury, except where it is otherwise provided in this Constitution, shall remain inviolate." The wisdom of our system of jury trials and its important contribution to the preservation of human liberty will hardly be denied. However important other constitutional rights of the individual, including that of due process, their preservation will not authorize a destruction of this right of trial by jury. Indeed, under the constitution and statutes of Georgia, one charged with crime can not possibly have due process of law if his right of trial by jury is withheld. If the appellate court is allowed to determine one issue of fact presented on

the trial of one charged with crime, independently of the jury's verdict thereon, it can by virtue of the same authority determine any and every issue of fact and by this process undermine and destroy the constitutional guaranty of trial by jury. Imperfect though the jury system may be, it is infinitely preferable to judicial tyranny, and will not be sacrificed by any ruling of this court. The functions of this court are limited exclusively by constitutional mandate to a consideration and determination of questions of law. Code, § 2-3005. The first twelve grounds of the amendment to the motion for a new trial are without merit.

■ Ground 15 complains of an excerpt from the charge, wherein the jury was instructed that the defendant by his plea of not guilty puts in issue every material allegation of the indictment, and that he enters upon his trial with the presumption of innocence in his favor, which presumption remains with him throughout the trial and at every stage of the trial, and imposes upon the State the duty to overcome this presumption and to establish the guilt of the defendant, by competent testimony, to a moral and reasonable certainty and beyond a reasonable doubt. It is conceded that the charge is correct in the abstract; but it is contended that it does not instruct the jury with sufficient clarity as to the burden of proof, and that such burden requires the State to prove by competent evidence introduced in the presence and hearing of the jury each, every, and all allegations in the indictment, and that it does not instruct the jury that other portions of the charge will instruct them on the question of carrying the burden. The criticisms of this charge are wholly without merit. It is a correct statement of the law, and is not erroneous for any reason assigned. *McBeth* v. *State,* 122 *Ga.* 737 (2) (50 S. E. 931); *Paramore* v. *State,* 161 *Ga.* 166 (6) (129 S. E. 772).

■ Ground 16 complains because the judge charged on the law of justifiable homicide, the grounds of complaint being that although the principles of law given are sound in law there was no evidence to authorize the charge, and that it was misleading and prejudicial. The record shows that justifiable homicide was not involved. The defendant was charged with murder by shooting the deceased, and he denied any knowledge or connection therewith, thus making an issue of murder or nothing. But, although it was error to submit by the charge the question of justifiable

homicide, this is not reversible error unless the defendant was injured thereby. It certainly did not endanger the defendant of being convicted of a crime greater than that embraced in the issue admittedly presented on the trial. The charge complained of is simply more favorable to the defendant than he was entitled to under the evidence. He suffered no injury thereby, and has no ground for complaint. *Ward* v. *State,* 184 *Ga.* 566 (2) (191 S. E. 916); *Geer* v. *State,* 184 *Ga.* 805 (193 S. E. 776). To the same effect see *Walton* v. *State,* 190 *Ga.* 746 (10 S. E. 2d, 755).

■ Ground 17 complains because the court charged the jury that when two or more persons form a common intent and purpose to commit a crime, and in pursuance of such common intent and purpose such crime is committed, then and in that event the act of each person so acting and participating in such criminal intent is attributable to and is the act of all so present aiding and abetting in the commission of the crime and acting with a common intent and purpose to commit the crime. The criticism is that the charge instructed the jury that a crime was committed or that a conspiracy existed, and that it is opinionative in that it is an assumption that a conspiracy did exist, and that it invaded the province of the jury and took from them the right to determine under the evidence whether the crime had been committed or a conspiracy existed, and that nowhere in the charge had the jury been instructed to determine whether the conspiracy existed, and that if there was no conspiracy each would be liable only for acts committed by himself. The charge excepted to is a correct statement of the law. It intimates no opinion, and is not subject to any of the grounds of attack. This ground is without merit.

■ Ground 13 contends that the verdict is without evidence to support it, and that it is based upon confessions of guilt which were not corroborated. Ground 14 contends that the verdict is entirely against the weight of evidence, in that it is based upon confessions or admissions when the evidence shows such admissions or confessions to be untrue. These two grounds along with the general grounds deny the sufficiency of the evidence to support the verdict. It is true that confession alone is insufficient to support a verdict, and that to authorize a conviction upon confessions there must be corroboration. Code, § 38-420. But it can not be denied that the alleged confessions in the present case were corroborated,

not only by proof of the corpus delicti, but by the testimony of Mrs. Stevens, by the testimony of Mrs. Lee to the effect that two shots were fired, and by the discovery of two bullets, and the sign of tracks outside the window where Dr. Lee was shot; and the sufficiency of the corroboration is after all a question for determination by the jury. *Davis* v. *State,* 105 *Ga.* 808 (3) (32 S. E. 158); *Coley* v. *State,* 110 *Ga.* 271 (34 S. E. 845); *Hinson* v. *State,* 152 *Ga.* 243 (109 S. E. 661). Whether the confessions were untrue, as contended, was also an issue of fact for the determination of the jury. The evidence as a whole authorized the verdict.

*Judgment affirmed.* *All the Justices concur.*