In the instant habeas corpus case, brought by one person for the release of another convicted of rape, it was alleged in the petition that the conviction was void for the reason that the accused was deprived of due process of law under the Fourteenth Amendment to the Constitution of the United States, in that an alleged signed confession that was introduced in evidence against him on his trial was not freely and voluntarily made, but was obtained by force and violence and other unlawful means, whereby the accused was required to give evidence tending to incriminate himself. A response was filed and the case was heard and determined by the judge upon evidence introduced by the respective parties. The exception is to a judgment remanding the prisoner to custody. It appears from the record without dispute, that the prisoner, upon his trial under the criminal charge, objected to the admission of the alleged confession in evidence upon substantially the same grounds that were later urged in the petition for habeas corpus, and that the trial court overruled the objections and admitted the statement or confession in evidence. A motion for a new trial complaining of this ruling was denied, and such judgment denying a new trial was affirmed by this court. Held:
1. The questions as to the voluntary character of the alleged confession and its admissibility in evidence, having been adjudicated adversely to the accused by courts of competent jurisdiction in the original case, could not be again litigated, by or in behalf of the prisoner, in a habeas corpus proceeding. Daniels v. Towers, 79 Ga. 785 (2) (7 S.E. 120); Walker v. Clarke, 150 Ga. 98 (102 S.E. 822); Wells v. Pridgen, 154 Ga. 397 (144 S.E. 355); Andrews
v. Aderhold, 201 Ga. 132 (39 S.E.2d 61); Hall v. Scoggins, 202 Ga. 198 (42 S.E.2d 763); Wood v. Brush, 140 U.S. 278 (11 Sup. Ct. 738, 35 L. ed. 505 (5)); in Re Swan, 150 U.S. 637 (1, 2) (14 Sup. Ct. 225, 37 L. ed. 1207); Frank v. Mangum, 237 U.S. 309 (35 Sup. Ct. 582, 59 L. ed. 969); Ex parte Ulrich, 43 Fed. 661.
2. Moreover, even if it might be assumed that the questions as to the validity and admissibility of the alleged confession were open for a new adjudication in the habeas corpus case, still, under the evidence that was introduced, the judge, sitting as a trior of the facts in such case, was authorized to find, as he did, that the confession had been freely and voluntarily made. See, in this connection, Claybourn v. State, 190 Ga. 861 (1) (11 S.E.2d 23); Lewis v. Patterson, 191 Ga. 348 (4), 357 (12 S.E.2d 593); Williams v. State, 192 Ga. 247, 253 (15 S.E.2d 219); Mathis v. Scott, 199 Ga. 743 (2) (35 S.E.2d 285); Hawk v. Olson, 326 U.S. 271
(66 Sup. Ct. 116, 90 L. ed. 61). See also Mangum v. State, 201 Ga. 519 (40 S.E.2d 423).
3. The facts of the instant case differ materially from those in each of the following cases, cited for the plaintiff in error: Yick Wo v. Hopkins, 118 U.S. 356 (6 Sup. Ct. 1064, 30 L.ed. 220); Moore v. Dempsey, 261 U.S. 86 (43 Sup. Ct. 265, 67 L. ed. 543); Mooney v. Holohan, 294 U.S. 103
(55 Sup. Ct. 340, 79 L. ed. 791, 98 A.L.R. 406); Brown v.
Mississippi, 297 U.S. 278 (56 Sup. Ct. 461, 80 L. ed. 682); Chambers v. Florida, *Page 341 309 U.S. 227 (60 Sup. Ct. 472, 84 L. ed. 716); Ward v. Texas, 316 U.S. 546 (62 Sup. Ct. 1139, 86 L. ed. 1663). None of these decisions would require or authorize a reversal of the judgment in the present case.
Judgment affirmed. All the Justicesconcur.
This is a habeas corpus case. James Mangum, a negro, was convicted of rape, the alleged victim being a white woman. The verdict of conviction containing no recommendation, he was sentenced to death by electrocution. His motion for a new trial, containing the usual general grounds and one special ground added by amendment, was overruled, and he excepted. The judgment refusing a new trial was affirmed by this court on November 13, 1946. Mangum v. State, 201 Ga. 519.
Thereafter, on December 19, 1946, S. S. Robinson presented to Honorable Melville Price, Judge of the Superior Courts of the Atlantic Circuit, an application for the writ of habeas corpus against A. C. Aderhold, warden, alleging that the conviction of Mangum was void, and praying that the warden, who then held Mangum in custody, be required to bring him before the judge for the purpose of examining into the cause of his detention.
The applicant alleged that the conviction of James Mangum is void because it was based upon an alleged rape, and the only corroborating testimony relied on was an alleged confession by Mangum, which was repugnant to the Fourteenth Amendment to the Constitution of the United States, in that the said Mangum was denied due process of law and was forced to give evidence which tended to incriminate himself; also, that his conviction is void and repugnant to the Fourteenth Amendment, in that he was coerced, forced, intimidated, threatened, and beaten to such an extent that *Page 342 
he had fear that his life would be taken from him if he did not confess to something which he did not do.
It was further alleged that the conviction was contrary to the Fourteenth Amendment and void, in that the said Mangum was informed that if he would sign his name he would get a bond, so that he was thus offered hope of reward, which offer was beyond the power of the officers to make, but Mangum relied thereon in order to escape further coercion, beatings, threats, and intimidations.
The warden filed a response and produced the body of the prisoner, as required by the judge. No demurrer was filed, and at the hearing evidence was introduced by both sides, as hereinafter more fully stated. At the conclusion of the hearing, the judge passed the following order: "After hearing evidence and argument in this case, the court finds from the evidence that the confession used in the evidence in the trial was freely and voluntarily made, and that constitutional rights of the prisoner were not violated, and the prisoner is hereby remanded to the respondent warden for such disposition as the law may direct."
To this judgment the applicant for habeas corpus excepted, thus bringing the case to this court for review. No other ruling or order was assigned as error.
The applicant introduced in evidence a certified copy of the entire record of the trial of James Mangum on the charge of rape, together with a copy of his motion for new trial and the amendment thereto; but the present statement, unless otherwise indicated, will deal first with the evidence that was introduced on the trial of the habeas corpus case.
It appeared from the evidence that Mangum was arrested on February 3, 1946, and there was evidence regarding four separate statements, each purporting upon its face to have been signed by him. One of these statements was dated February 9, 1946, and three were dated February 20, 1946.
Mangum, testifying in the habeas corpus case, admitted signing one of the statements dated February 20, but testified that it was blank when he signed it. He denied signing any of the other statements mentioned. It appears from the record of the former trial that only one of the above-mentioned statements was introduced in evidence, to wit, the one that Mangum admitted signing in blank. *Page 343 
However, the respondent introduced evidence for the purpose of showing that all of the statements were signed by Mangum, and were genuine, also that they were freely and voluntarily made by him. The statement which he admitted signing, and which was the only one introduced upon his trial for rape, may be referred to as the main statement. In that statement, if it was genuine, he admitted the commission of several crimes during a period of four or five months, including the rape of a white woman on Bass Street, for which offense he was tried and convicted as above stated. In other words, it is the conviction for that alleged offense which is now assailed as being void, in the application for habeas corpus.
In support of the application, James Mangum, the applicant, testified as follows: "I didn't do anything to the lady. The officers beat me up in the police station and knocked these places on my head. The officers who did it were Officers Cox and Moss of the City of Atlanta Detective Squad. The detective officers offered me a blank sheet of paper to sign, stating it was to secure a bond for me to get out. That is the same piece of paper which you showed me and which now has some writing on it supposed to be my confession. Then I was kept on the third floor of the jail. I was not taken to the hospital. Another man was arrested along with me. I was not taken out with the other boys to see where the rapes are supposed to have taken place. At that time I was at the city jail and I did not have a lawyer and they would not let me see any of my relatives."
On cross-examination, he was asked about the four written "statements" to which reference has been made. His testimony with respect to signing them has already been given in substance, and need not be repeated. His further testimony on cross-examination was as follows:
Question: "During that first week after you were arrested February 3, 1946, didn't the detectives let you talk to your sister, Dorothy Rogers?" Answer: "No, sir. I was never taken out of the station house until they taken me to the Big Rock, the city jail. I never told any one that I raped any woman. The little officer gave me the sheet of paper to sign. He is Mr. Cox."
Homer Strickland testified for the applicant: Direct examination: "My name is Homer Strickland. I am the uncle of James Mangum. I saw James the Saturday before he was arrested. He *Page 344 
appeared to be all right then. He looked all right to me. He was all right then. I saw him again the Tuesday after his arrest. He was all right at that time. I saw him again in the police station while I was visiting another boy there. I visited James Mangum for the first time after he was taken over to the county jail. When I saw him then at the county jail, his whole face and head was swollen. His face round about his right eye was blue and swollen, his right eye was blackened and red, his nose and his lips were bruised and puffed out of shape. He looked very different from what he looked like before he was arrested and taken to the Big Rock Jail." Cross-examination: "James Mangum was brought out to see his sister the following Tuesday after his arrest. She talked to him. He was sitting in the officer's car. I talked with James about ten minutes, two or three other men were in the car. All the while he was handcuffed and in the presence of the officers. The officers just sat in the car and stood besides the car door listening to everything James and I talked about. All the time I talked to him he was sitting in the car and handcuffed. He was not allowed to get out of the car."
Dorothy Rogers testified for the applicant: Direct examination: "My name is Dorothy Rogers. I am the sister of James Mangum. I don't know the day on which he was arrested. James was brought out to my house. That was Tuesday following his arrest. I just don't remember the day he was arrested. At the time he was arrested he was all right. He looked all right. Yes, I mean he looked all right on Tuesday. When I saw him he was just sitting in the detectives' car handcuffed. I was not left alone with him. The officers just stayed right there. One was in the car and one was standing right beside it. No, there was no privacy, we were all just right there together, the officers and all. I could not talk to him freely. They made him stay in the car." Question: "When did you see James after Tuesday?" Answer: "The next time I saw James was in the county jail." Question: "Did you talk with him?" Answer: "Yes, sir. I talked with him. He was in a small room." Question: "Did you see his face? If so, describe it." Answer: "Yes, sir, I saw his face, it was all bruised and swollen up. At the time I saw him his right eye was reddened and bruised and swollen. His right cheek, his mouth, and his lips were bruised and swollen. He didn't look the same as he looked *Page 345 
before he was arrested. He was not looking the same as he was looking on Tuesday. They would not let me or anybody see him while he was locked up in the city jail." Cross-examination: "I saw James about a week after he was arrested. I don't know what day that they arrested James. I just don't know. I can't say what day it was, as I don't know. No, I just can't possibly say. I talked to James on Tuesday after his arrest. The officers brought him to my house. Yes, I could talk to him, but the officers were right there. Yes, I guess he could have gotten a lawyer." Redirect examination: "James was held on suspicion for a week before they would let me see him."
W. M. Cox testified for the respondent: Direct examination: "I am a member of the city police force of the City of Atlanta. I am the W. M. Cox who signed as a witness on this two-page confession signed by James Mangum on Feb. 20, 1946. [Identifying the document referred to above as the "main statement," identified in the record as Exhibit C.] He signed that in my presence on that date, February 20, 1946. It was not blank. It was completely filled out then, as now, in two pages. He also signed this one. [Identifying carbon copy of the same document.] That also was completely written when he signed it. He also signed this short one-page statement, dated February 20, 1946, on that same occasion, which bears my signature as witness also. [Identifying one-page statement previously exhibited to James Mangum during his cross-examination, Exhibit B.] Before he made the above statement on February 20, he had already made one typewritten statement on February 9, 1946. This is the statement that James Mangum signed on February 9. . . This was signed by all three prisoners, James Mangum, Lee James Allen, and Luther Henderson. . . I recall that Mangum was informed that the statement could be used against him in court, and the statement says the same thing . . . These statements of February 9 and 20th were made by James Mangum freely and voluntarily. There were no threats or coercion against him. No promises were held out to him. We did not promise him that he could make a bond if he signed it. My partner, Officer Moss, was also present. . . Officer Moss and I arrested James Mangum, known also as James Strickland, on Sunday, February 3, 1946, about 8:30 a. m. I was not investigating the charge of rape when *Page 346 
we arrested Mangum. We were investigating some burglaries and thefts. Later on, in the week following his arrest, Mangum confessed to the rapes, so the written statement was taken down on February 9, by Mangum and the other two prisoners, confessing to these rapes. It took some time to investigate the rapes even after they had confessed to them, because we had to search the records of the Police Department for reports of the rapes, and had to hunt up witnesses. I told these defendants they didn't have to make any statements if they did not want to. No threats were made against Mangum or the other prisoners. No swollen places were observed on Mangum's face. We allowed James to talk with his relatives several times. We took him by the house of his sister, Dorothy Rogers, on the Tuesday following his arrest on Sunday, and allowed her to talk to him then. We took him there while we had him in our automobile to take him to point out to us certain places where he was admitting that he had done certain things. She talked to him more than one time while he was in police custody. The first time was on Monday, February 4, the day after he was arrested. She came to the police station and saw him and talked to him. We did not keep James Mangum up late at night. There was only one time we had him at night, and that was the night of February 20, when he made these last statements, and we finished taking the confessions then about 9:30 p. m. . . We never deprived him of his sleep later than 9:30 p. m. We never questioned him in shifts, that is, with one officer questioning him and then resting while another officer took over questioning of him. We never did that."
On cross-examination, Cox testified: "My duties begin at 8 o'clock a. m. to 4 o'clock p. m. I was in and out with the defendant all during the day. It took me several days to question him. We took him out so he could show us the spots of the alleged rapes. Part of the time he was handcuffed. Just two officers was a reason for the handcuffing of James Mangum. We waited until February 20 because these boys kept changing their statements and adding other information. . . I did not say anything to Mangum about letting him out on bond if he signed a sheet of paper. I told these boys that they did not have to sign the confessions if they did not want to. Mr. Cole was present when I told them that. I do not know what a flap jack is. I suppose it is a piece *Page 347 
of leather over iron. We never used such an instrument between February 3 to February 20, 1946. Mr. Moss never hit any of these men while in my presence. I observed no bruises on Mangum at any time during the time they were in the custody of city detectives. I did not notice any bruises."
Calvin Cole, sworn as a witness for the respondent, testified: Direct examination: "I am an investigator for the Solicitor-General of the Atlanta Circuit. This is my signature as a witness on this two-page confession signed by James Mangum and dated February 20, 1946. [Identifying the document Exhibit C, referred to above as the "main statement."] I typed that statement for him, putting down the statements which he made to me, and then he signed it in my presence. That was on February 20, 1946. It was not blank when he signed it. No one struck or threatened or promised to give him anything in my presence. There were no swollen parts on his face or head that I could see. . . James Mangum had made a statement before that, on February 9, 1946. I happened to come into the room on February 9 where the Constitution reporter, Keeler McCartley, was typing the statement for James Mangum and two other prisoners, Lee James Allen and Luther Henderson. I waited only a few minutes and did not wait to see them sign the statement of February 9, but I heard them orally admit their guilt of some rapes while I was there on February 9. Between the 9th and 20th of February I was with Officers Cox and Moss and with Mangum, and Mangum pointed out to us the place where he said he grabbed this woman on Bass Street, who testified against him at the trial at which he was given this death sentence. After we got back to the police station Mangum mentioned a Boy Scout hut, saying there was a Boy Scout hut close to where they dragged this lady and raped her. I went back to the place that Mangum had pointed out to us and saw that there was a Boy Scout hut in fact there. I made no threats and heard no one else threaten Mangum. His face and features seemed regular."
On cross-examination, Cole testified: "I didn't type the statement of February 9th. I do not remember advising the boys of their right to have counsel. I cannot remember now, but whatever I said at the original trial, that was correct. I was out only once or twice with the defendants in the car. I swore at the trial in Fulton Superior Court, `You asked me when this boy is *Page 348 
supposed to have made this statement, if I advised him that it was a serious offense that he was charged with . . all I told that boy was I wanted to know the truth about it,' and that is the truth now. I testified at the trial, `You asked me if I advised him of his right, that he did not have to sign this confession, that it could be used against him. . . I just told him that I wanted him to tell the truth,' and that is the truth now. At the trial I testified. `He was not advised as to his right to counsel, and that anything that he said might be used against him; nothing was said about that; I just asked him to tell me the truth about it,' and that is the truth now. I don't know whether Mangum had a lawyer at that time or not, none was present. No friends were present at the time of taking the alleged confessions."
Referring now to the record of the original trial under the indictment for rape and the motion for a new trial as filed and later amended — it appears that in the one special ground of the motion for a new trial, the movant, James Mangum, contended that the court erred in admitting, over objection, the alleged statement or confession which is referred to above as the main statement.
The movant objected to the introduction of this statement on the grounds: (1) it required the defendant to produce evidence against himself, in violation of the State and Federal Constitutions; and (2) it was in violation of the Fourteenth Amendment to the Federal Constitution, in that (as contended in the objection) the statement was obtained while the defendant was incarcerated, and under threats or duress. The motion for a new trial further recited: "Movant contends that said document was inadmissible as evidence in that it was immaterial and a violation of defendant's constitutional rights as provided for by United States constitutional amendment 14, providing that no person shall be denied due process of law. Movant contends that the admission of the foregoing document was a violation of his constitutional rights under said 14th Amendment to the United States Constitution, because of the fact that the evidence in behalf of the State tended to show that said defendant was at the time of signing said statement incarcerated and that duress was used in procuring the defendant to sign said statement. As a part of this ground, movant respectfully sets forth the evidence in full of Mr. Calvin Cole and Officer W. M. Cox, witnesses on behalf of the State, which is as *Page 349 
follows:" The motion then quoted testimony of the witnesses Cole and Cox touching the circumstances under which the alleged statement was made, and on the basis of which it was contended by the State that such statement or confession was free and voluntary.
The record shows further that the motion for a new trial, as above referred to, was overruled by the trial court, and that the judgment was affirmed by this court.
It appears that Mangum's sister, Dorothy Rogers, and his uncle, Homer Strickland, who testified as witnesses for the applicant in the habeas corpus case, did not testify upon the original trial. However, the defendant in his statement to the court and jury upon the original trial made substantially the same contentions regarding the alleged statement to the officers that he made later by testimony in the habeas corpus case.