24206.   JAMES v. THE STATE.

SUBMITTED SEPTEMBER 13, 1967—DECIDED OCTOBER 9, 1967.

*Muskett & Moore,* for appellant.

*Lewis R. Slaton, Solicitor General, George K. McPherson, J. Walter LeCraw, Amber W. Anderson, Arthur K. Bolton, Attorney General, Marion O. Gordon, Assistant Attorney General, Mathew Robins, Deputy Assistant Attorney General,* for appellee.

MOBLEY, Justice.   William Haywood James was convicted of the murder of Hulet M. Varner, Jr., with a recommendation of mercy, and was sentenced to life imprisonment.

The evidence for the State showed the following: On the night of September 10, 1966, a group of Negro youths were returning from a football game, and as they were coming up Boulevard, near Ponce de Leon Avenue, in the City of Atlanta, a car described as a 1959 black and white Chevrolet with a hole in the right tail light (identified as the car owned by the defendant) was driven up beside them, and a woman in the car called to them, "Hey, how are you doing."   Someone in the group replied, one witness stating that one of the group said, "Hey, baby," or "Hey, sweetheart."   The woman pulled a gun out of a paper sack, and the youths ran away from the car.   Several minutes later they heard shots fired from the direction in which the car was going.   On the same evening another group of Negro youths were on Boulevard, in front of a building numbered 420 Boulevard, when a car of the same description stopped in front of them. The man and woman in the car were talking to each other.   Then the man, who was driving the car, backed it to where the group was standing, and the woman asked the youths if they called them, and they replied that they had not. The driver then pushed the woman aside and shot into the group several times, wounding one of the youths and killing the deceased.   The driver of the car was identified by several witnesses as the defendant on trial. The witnesses to the shooting testified that no one attacked the persons in the car, or hit the car with any object, prior to the shooting.   There was testimony that a riot occurred after the shooting.

In his unsworn statement the defendant related the following:

On the night of September 10, 1966, he and his wife were traveling from a launderette on Ponce de Leon Avenue to their home. When they turned the corner into Boulevard, there was a group of Negroes walking slowly, chanting something which he could not understand. They started calling to his wife, saying, "Hey, baby," and making obscene and threatening remarks to him and his wife. He proceeded a little faster, and there was another group up the street. At the next corner he had to stop for a red light, and he saw a group of Negroes who were calling to each other by name, and shouting, "black power," and, "let's keep Carmichael out of jail." One jumped on the bumper of his car, and beat on the trunk, shouting, "black power and down with white people, up with black people." The defendant proceeded up the street, and a Negro man at a whiskey store threw a bottle, which went over the hood of his car because he suddenly pressed on the brakes. The man on the back of the car tried to stop them. A car pulled out in front of them, which blocked them. When the defendant tried to back the car, a group blocked him in that direction. His wife became frantic, and she reached for the gun which he kept in the car for her protection. He told her to give it to him, and he put the gun under the seat. He intended to try to back up the car again but someone hit him with a brick on the side of his head, and made threatening obscene remarks to them. He then saw a man with a small pistol, which looked as if it were pointed at his wife. He reached underneath the seat and got his pistol, and fired it two or three times into the crowd, and they started dispersing. He rushed from the scene, and was too frightened to tell anyone what happened.

■ Twenty assignments of error are enumerated. Assignments 1 through 5, 15, 16, 18, and 19 relate to the introduction in evidence of statements or admissions of the defendant. The incriminating admissions were his statements to the police officers interrogating him that the injuries on his head and side which he displayed to them were received on Thursday night, and not on Saturday night, the time of the homicide; his denial of ownership of the car described by the witnesses, his later admission of ownership of the car after the officers told him that his fingerprints were on the car, and his denial that he used the car on the night of the homicide.

In the first assignment of error it is asserted that it was error not to grant an independent hearing as to whether any statements or admissions made by the defendant were voluntary. In the fourth assignment of error it is contended that the court erred in denying the defendant's motion to suppress evidence obtained by the State in violation of his constitutional rights.

At the commencement of the trial, counsel for the defendant submitted a written motion to suppress evidence of admissions or statements of the defendant asserted to have been obtained in violation of his constitutional rights. The trial judge refused to hear evidence on the question of voluntariness at that time. He did have a separate hearing, out of the presence of the jury, as to the voluntariness of the defendant's statements, and whether his constitutional rights were denied him at the time of making the statements, prior to the introduction of the statements in evidence. Counsel for the defendant rely on Jackson v. Denno, 378 U. S. 368 (84 SC 1774, 12 LE2d 908, 1 ALR3d 1205), which held that an accused is entitled to a state court hearing on the issue of voluntariness of a confession by a body other than the one trying his guilt or innocence. In that case (at page 376) it was held: "It is now axiomatic that a defendant in a criminal case is deprived of due process of law if this conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession, . . . and even though there is ample evidence aside from the confession to support the conviction. . . Equally clear is the defendant's constitutional right at some stage in the proceedings to object to the use of the confession and to have a fair hearing and a reliable determination on the issue of voluntariness, a determination uninfluenced by the truth or falsity of the. confession."

The rulings in Jackson v. Denno, 378 U. S. 368, supra, were followed in the present case by the trial judge, who heard lengthy testimony in regard to the circumstances surrounding the statements or admissions of the defendant, out of the presence of the jury. This was done "at some stage in the proceedings" within the meaning of the decision in Jackson v. Denno, supra, and the assignments of error on the denial of the motion to suppress evidence are without merit.

The second assignment of error is the failure of the judge to make a specific finding as to whether or not any statements or admissions made by the defendant were voluntary, prior to submitting the issue to the jury. The record shows that both by an oral announcement (not in the presence of the jury), and a written order, the judge made a specific finding that the statements were voluntary and admissible, and there is no merit in this contention.

■ The third assignment of error asserts that the judge erred in not submitting the issue of voluntariness of any statements or admissions of the defendant to an independent jury separate from the jury which tried the case. It is insisted that under Georgia law questions of voluntariness of a confession have been held to be issues for determination by a jury, citing *Claybourn v. State*, 190 Ga. 861 (11 SE2d 23), and *Bryant v. State*, 191 Ga. 686 (13 SE2d 820). It is then contended that since the Supreme Court of the United States in Jackson v. Denno, 378 U. S. 368, supra, held that the jury trying the main issue of guilt in a criminal case can not try the issue of voluntariness of a defendant's alleged admissions or confessions, it is mandatory that a separate jury must try the issue of voluntariness of an admission or confession.

There is no merit in this contention. The Supreme Court of the United States in Jackson v. Denno, 378 U. S. 368, supra, did not so hold. There is no provision of Georgia law which requires a determination by a jury as to the voluntariness of any confession or admission, other than the jury trying the case. The judge in the present case did not intimate any opinion to the jury trying the case as to what had been proved in regard to the voluntariness of the statements at the time the evidence was admitted, and he submitted the issue of voluntariness to them in his charge. The defendant was thus given all rights which have been declared to be his under Georgia law and by the decisions of the Supreme Court of the United States in connection with the admission in evidence of his incriminating statements.

■ In the fifth assignment of error it is asserted that the court erred in denying the defendant's motion to exclude testimony in regard to the defendant's statements to arresting officers

concerning the brick found in his car, on the ground that it was not voluntarily given. The officers testified that they told the defendant that he should tell them if it happened on Saturday night, that it would be in his favor. It is asserted that the defendant's statement that it happened on Thursday night, not Saturday night, would be inadmissible under *Code* § 38-411, which provides that a confession, to be admissible, "must have been made voluntarily, without being induced by another, by the slightest hope of benefit. . ."

It is obvious that the suggestion of the officers that it would be in the defendant's favor if he was hit with a brick on Saturday night did not induce his statement that it was on Thursday night, and the testimony was not inadmissible as claimed.

■ Grounds 15, 16, 18, and 19 of the enumeration of errors complain of the admission in evidence of the testimony of Officers Helms and Peaden concerning the statements of the defendant dealt with in the previous divisions of this opinion. We have carefully considered the evidence on the voluntariness of the defendant's statements, and have determined that the trial judge was authorized to find that the statements were made voluntarily, and that the defendant's constitutional rights, as delineated by the Supreme Court of the United States in Miranda v. Arizona, 384 U. S. 436 (86 SC 1602, 16 LE2d 694, 10 ALR3d 974), were not violated in obtaining these statements.

■ The sixth assignment of error is the denial of the defendant's motion for a mistrial based on the fact that in the State's summation the solicitor commented upon the defendant's wife not testifying. Counsel for the State in his closing argument to the jury made the following remarks: "Defendant's wife, Ruth James, was with the defendant at the occurrence, but she did not testify. Certainly, she could have explained what occurred and if the defendant were telling the truth she would have taken the stand and corroborated him." The trial judge did not rebuke counsel for making this argument, and he denied the motion for mistrial.

*Code* § 38-119 provides: "Where a party has evidence in his power and within his reach, by which he may repel a claim or charge against him, and omits to produce it, or, having more

certain and satisfactory evidence in his power, relies on that which is of a weaker and inferior nature, a presumption arises that the charge or claim is well founded; but this presumption may be rebutted." It has been held that it is error to give this section in charge in a criminal case, since the burden is on the State to establish the defendant's guilt beyond a reasonable doubt. *Mills v. State,* 133 Ga. 155 (65 SE 368).

Counsel for the State contend that the present case is controlled by *Dorsey v. State,* 204 Ga. 345 (3) (49 SE2d 886), which held: "While no presumption of guilt arises by failure of the defendant to introduce witnesses in his own behalf, yet it is proper for the solicitor to argue to the jury any inferences of fact which might reasonably be arrived at from the evidence. Since the defendant had said in his statement to the jury, 'I have worked for Mr. Collier about three years . . . he knows I would not do a thing like that. I worked at Davison-Paxon's and the manager up there knows me. He can give an account of me,' and since the defendant had not produced the witnesses referred to in his statement, it was not error for the solicitor to argue to the jury his inference to the effect, 'Gentlemen of the jury, this defendant did not produce a single witness to back him up on his claim of innocence. If he had not been guilty, he could have gotten somebody to testify for him.' "

A wife is competent, but not compellable, to give testimony in any criminal proceeding for or against her husband. *Code* § 38-1604, as amended by Ga. L. 1957, p. 53. The privilege of refusing to testify belongs to the witness and not to the accused. The defendant did not have the power to produce his wife as a witness against her will, and no inference could properly arise that he was not telling the truth because she did not testify and corroborate his statement.

In *Knox v. State,* 112 Ga. 373 (2) (37 SE 416), it was held: "Mere failure by one on trial for crime to call and examine as a witness his daughter who was shown to have been present at the commission of the alleged offense could in no event raise a presumption against the accused that the daughter would, if introduced, have testified unfavorably to him, when it affirmatively appeared that she was a 'little girl,' and did not appear

that she was of sufficient age to be a competent witness. In the absence of any evidence upon this point, the failure to call ·and examine her was not a legitimate subject matter of argument before the jury."

The record in the present case shows that the wife of the defendant refused to testify in the case. She had the right to do this for any reason favorable to her own interest, and the· defendant could not require her presence as a witness. It was thus not a legitimate subject matter of argument for counsel for the State that the defendant's wife did not testify.

■ The seventh assignment of error is the failure to grant a mistrial because of comment of the solicitor on the failure of the defendant to make a sworn statement. In an order correcting the transcript and certifying additional transcript to be transmitted to this court, the trial judge certified that such argument was not made. This assignment of error therefore presents no question for this court.

■ In assignments 8, 9, and 10 the defendant contends that it was error to refuse to admit testimony of Fred Riley that prior to the homicide some of the Negroes involved with the defendant struck a white lady's car, and struck with a brick the cars of a television salesman and a soldier. The transcript of evidence shows that the occurrences about which this witness was questioned occurred after the homicide. One of the incidents occurred several hours thereafter, and as to the other incidents the judge sustained objections to evidence of any occurrences after the homicide, and the witness was not allowed to testify when the incidents occurred.

In assignment 14 it is asserted that it was error to refuse to admit in evidence the testimony of Officer N. J. Spears that he was shot at the scene of the homicide. The transcript shows that this officer received a call in regard to the shooting, and proceeded immediately to the scene. He related his activities at the scene until the time that he was shot in the head. The judge sustained objections to the testimony of this officer relating matters occurring after the homicide.

The judge erred in excluding the testimony of these witnesses. The defendant's asserted defense to the shooting was that riotous

conditions existed in the area in which the homicide occurred, and that he shot into the crowd in which the deceased was standing because of his fears for the safety of himself and his wife. Evidence of violent acts involving the drivers of other vehicles, and the shooting of an officer at the scene of the homicide, on the same evening that the homicide occurred, was relevant to show the conditions existing in that neighborhood and to corroborate the defendant's statement that riotous conditions existed at the time of the shooting.

■ In assignment 11 error is asserted because of the refusal to admit testimony of Fred Riley as to whether he would have participated in rioting if he had the chance. This witness testified that he participated in the riot that followed the homicide. It was not error thereafter to sustain the objection to the question as to whether he would have participated in rioting if he had the opportunity.

■ In assignment 12 it is asserted that the court erred "in making the statement that the court ordered defense counsel investigated in contacting witnesses, this being made in the presence of the jury." While counsel for the defendant was cross examining the witness Mildred Jones he asked her if she remembered that he called her the other night and told her that he was an attorney representing the defendant and wanted to interview her. She replied that she remembered that he called and stated that he was representing the deceased boy. The judge questioned counsel about this, and counsel stated that he told the witness that he was representing the defendant. Counsel for the State made the statement that he could show by about a half-dozen of his witnesses that counsel for the defendant stated to them that he was with the solicitor's office. The judge then remarked: "I want that investigated."

Counsel for the defendant asserts that it was prejudicial to the defendant for the court in the presence of the jury to infer that his counsel was dishonest. This statement of the judge in the presence of the jury was prejudicial to the defendant, and was improper.

■ It is asserted in ground 13 that the court erred in admitting the testimony of Nora Varner, mother of the deceased, that

her son was shot on the sidewalk not far from the front door of their apartment located at 420 Boulevard, N. E. Objection was made to this testimony because the witness was not present when the shooting occurred. She then stated that she was in the house when she heard shots, that she went out to investigate, and saw her son lying on the sidewalk. Her assumption that her son was shot on the sidewalk in front of their apartment was a reasonable deduction from the facts related by her. Furthermore, the evidence could not have been harmful to the defendant, since the place of the shooting was not in dispute.

■ In assignment of error 17 it is contended that the court erred in denying the defendant's motion for a mistrial because the witness Lieutenant Helms stated that he knew the defendant prior to the homicide. It is asserted that the jury would naturally draw the inference that this police officer knew the defendant prior to the homicide because the defendant had a criminal record, and that this testimony injected the defendant's character as an issue in the case.

When this testimony was introduced, counsel for the defendant objected to it as being irrelevant, and the judge sustained the objection. The testimony did not place the defendant's character in issue, and there was no error in denying the motion for mistrial.

■ The last assignment of error, that the court erred in refusing to allow the witness J. E. Helms to state whether he was familiar with the speech of the Mayor of Atlanta to the effect that the Mayor would use all facilities of his office to secure a conviction of the defendant, has not been argued, and is considered as abandoned.

*Judgment reversed. All the Justices concur.*